The STATE of Ohio, Appellee,

v.

HIATT, Appellant.

[Cite as *State v. Hiatt* (1997), 120 Ohio App.3d 247.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 95 CA 609.

Decided March 26, 1997.

*McIlwain & McIlwain* and *Douglas W. McIlwain,* for appellant.[1]

*Rocky A. Coss,* Special Prosecuting Attorney, for appellee.

---

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Adams County Common Pleas Court. The court found William A. Hiatt, defendant below and appellant herein, guilty of one count of failure to appear in violation of R.C. 2937.29.

Appellant assigns the following errors:

First Assignment of Error:

"The trial court erred by finding the appellant guilty after appellants no contest plea to an agreed upon statement of facts to an alleged violation of R.C. 2937.29, failure to appear."

Second Assignment of Error:

"The trial court erred in overruling appellant's *pro se* motion to dismiss the indictment on the charge of failure to appear in that the statute is unconstitution-

---

1. Different counsel represented appellant during the proceedings below.

ally vague, overbroad and indefinite, in violation of the United States Constitution and the Constitution of the State of Ohio."

Third Assignment of Error:

"The trial court erred in overruling appellant's motion to dismiss the indictment which was improperly brought by the Adams County Prosecuting Attorney's office, which was disqualified by the Code of Professional Responsibility from prosecuting the appellant."

Fourth Assignment of Error:

"The trial court erred in overruling appellant's motion to dismiss based on a speedy trial provision under R.C. 2945.71 and subsequently failing to dismiss the indictment for violation of appellant's rights under R.C. 2945.71."

On December 17, 1993, appellant pleaded guilty in the Adams County Common Pleas Court to kidnapping in violation of R.C. 2905.01(A)(5) and to gross sexual imposition in violation of R.C. 2907.05. The trial court accepted the guilty pleas and sentenced appellant. The court then stayed execution of sentence to January 19, 1994, at 9:00 a.m. and granted appellant bail on a $10,000 cash surety or real property bond along with appellant's own recognizance bond. The court ordered appellant to report to the Adams County Sheriff's Office on January 19, 1994 for execution of sentence. Appellant failed to report to the Adams County Sheriff's Office at the appointed time.

During the January 1994 term, Adams County Prosecuting Attorney Greg Carroll presented to the Adams County Grand Jury evidence concerning appellant's failure to report to the sheriff's office as ordered. The grand jury returned an indictment against appellant for failing to appear in violation of R.C. 2937.29. On February 10, 1994, Carroll notified the court that his office was disqualified from prosecuting the case. On the same day, the court appointed Highland County Prosecuting Attorney Rocky Coss to serve as special prosecuting attorney for the case. On October 16, 1995, appellant entered a no contest plea to the charge of failure to appear. On November 3, 1995, the trial court sentenced appellant. Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts that the trial court erred when it found him guilty based on his no contest plea to a stipulated set of facts.[2] Appellant argues that he could not be found guilty based on the agreed

---

2. Initially, we must address the issue of whether appellant properly preserved for appeal the issue set forth in his first assignment of error. As we noted above, appellant entered a no contest plea to the charge contained in Count Two of the indictment. Generally, a defendant's

upon facts because those facts did not involve an appearance before a court. In his second assignment of error, appellant asserts that the trial court erred when it overruled appellant's *pro se* motion to dismiss the R.C. 2937.29 charge. Appellant asserts that the motion alleges that R.C. 2937.29 is unconstitutionally vague and overbroad, and that the trial court should have dismissed the charge on that basis. We will address these two assignments of error together.

Regarding appellant's first assignment of error, appellant asserts that the Ohio General Assembly wrote R.C. 2937.29 intending to punish only those who fail to make a required court appearance, not those who fail to appear when the court has ordered them to appear as a condition of their release. Thus, appellant argues that because he was ordered to appear at the Adams County Sheriff's Office to begin the execution of his prison sentence and not at the Adams County Common Pleas Court, he did not violate R.C. 2937.29 when he jumped bond and failed to appear at the sheriff's office.

Appellant cites *State v. Pounds* (1993), 85 Ohio App.3d 207, 619 N.E.2d 487, in support of his argument. In *Pounds*, the Second District Court of Appeals found

appeal under a no contest plea is very limited. In felony cases, a no contest plea constitutes a complete admission of the truth of the facts alleged in the indictment. Crim.R. 11(B)(2); *State v. Sommers* (Dec. 8, 1992), Ross App. No. 92 CA 1856, unreported, 1992 WL 368846; *State v. Weiher* (June 11, 1990), Gallia App. No. 89 CA 10, unreported, citing *State v. Gilham* (1988), 48 Ohio App.3d 293, 549 N.E.2d 555; *State v. Thorpe* (1983), 9 Ohio App.3d 1, 9 OBR 1, 457 N.E.2d 912; and *State v. Pernell* (1976), 47 Ohio App.2d 261, 1 O.O.3d 318, 353 N.E.2d 891. Thus, a trial court may generally rely upon the facts alleged in the indictment when a defendant enters a no contest plea.

In the case *sub judice*, we note that appellant, while admitting the truth of the facts as alleged by the prosecution, asserts that those facts do not constitute an offense. Appellant argues that R.C. 2937.29 applies only to a defendant's failing to appear for a court appearance, not for failing to appear and surrender himself to the county sheriff in order to begin the execution of his prison sentence. Appellant therefore contends that his no contest plea, even when viewed as a complete admission of the facts alleged by the prosecution, does not prevent this court from considering whether his actions constitute a criminal violation. If those facts do not constitute an offense under the statute, appellant has not committed any act in violation of the statute.

We believe that we may consider the issue of whether the facts as presented by the parties may result in the conclusion that appellant violated R.C. 2937.29. See, generally, Crim.R. 12(H) (a no contest plea does not preclude a defendant from asserting on appeal that a trial court erred in ruling on a pretrial motion); *State v. Luna* (1982), 2 Ohio St.3d 57, 2 OBR 615, 442 N.E.2d 1284; *State v. Luna* (1994), 96 Ohio App.3d 207, 644 N.E.2d 1056; *State v. Bowsher* (1996), 116 Ohio App.3d 170, 687 N.E.2d 316. In *Bowsher*, the court noted, citing *State v. Engle* (1996), 74 Ohio St.3d 525, 660 N.E.2d 450, *State v. Ulis* (1992), 65 Ohio St.3d 83, 600 N.E.2d 1040, *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32, and *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 573 N.E.2d 22, that the Ohio Supreme Court favors a policy of early determination of dispositive issues. We believe that a pretrial disposition of the issue set forth in appellant's first assignment of error regarding the interpretation of R.C. 2937.29 serves the goal of judicial economy. Appellant may therefore plead no contest to the charge, agree to the factual basis of the indictment, and appeal the issue of statutory interpretation rather than completing a trial.

that the defendant, who had been ordered to keep an appointment for pretrial services as a condition of his own recognizance bond and had failed to attend, could not be found guilty of R.C. 2937.29 because the only appearances contemplated by R.C. 2937.29 are court appearances. Thus, the *Pounds* court concluded that the appointment for pretrial services was not an appearance within the meaning of R.C. 2937.29. See, also, *State v. Hayes* (Jan. 14, 1983), Hancock App. No. 5–82–11, unreported, 1983 WL 7178.

■ When interpreting statutes and their application, an appellate court conducts a *de novo* review, without deference to the trial court's determination. *State v. Sufronko* (1995), 105 Ohio App.3d 504, 664 N.E.2d 596; *State v. Boso* (Sept. 11, 1996), Washington App. No. 95 CA 10, unreported, 1996 WL 530007. In *Boso,* we wrote as follows:

■ "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594 [589 N.E.2d 1319, 1322–1323]. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis* (1991), 61 Ohio St.3d 213, 218 [574 N.E.2d 457, 461–462]; *S.R., supra,* 63 Ohio St.3d at 595 [589 N.E.2d at 1323]. In interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. *Independent Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314 [587 N.E.2d 814, 817]; R.C. 1.42. Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. *Wray v. Wymer* (1991) [77 Ohio App.3d 122, 131–132, 601 N.E.2d 503, 509]. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97 [573 N.E.2d 77, 80–81]. Sections of the Revised Code providing for criminal procedure shall be construed so as to affect the fair, impartial, speedy and sure administration of justice. R.C. 2901.04(B)." *Id.* at 3.

■ Thus, courts interpreting a statute must give effect to the words explicitly used in the statute. They may not delete words used or insert words not used. *State v. Taniguchi* (1995), 74 Ohio St.3d 154, 656 N.E.2d 1286; *State v. Waddell* (1995), 71 Ohio St.3d 630, 646 N.E.2d 821. Additionally, penal laws must be "strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A); see, also, *State v. Quisenberry* (1994), 69 Ohio St.3d 556, 634 N.E.2d 1009.

R.C. 2937.29 provides as follows:

"When from all the circumstances the court is of the opinion that the accused will appear as required, either before or after conviction, the accused may be

released on his own recognizance. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code."

We decline to follow the *Pounds* decision. The *Pounds* court based its ruling on its reading of the pertinent provisions of R.C. Chapter 2937. The court reasoned that when writing R.C. 2937.29, the Ohio General Assembly intended the word "appearance" to mean only appearances before the court. Thus, the Second District takes a very narrow view of the provision's language. (See, also, *State v. Hayes* [Jan. 14, 1983], Hancock App. No. 5–82–11, unreported, 1983 WL 7178, a Third District case cited by the *Pounds* court excluding from the statute's scope a failure to appear for an appointment with a probation officer.) We, however, construe the language of R.C. 2937.29 to encompass the facts at bar. The trial court released appellant from custody on a recognizance bond after he was convicted and sentenced. Appellant had requested time to put his affairs in order before beginning his prison sentence. The court ordered him to report to the Adams County Sheriff's Office to begin serving that sentence. Crim.R. 46 provides the method by which a court may release a defendant after a criminal conviction. Thus, unlike an appointment for pretrial services or with a probation officer, appellant's obligation to present himself at the date and time specified was very clear. Whereas the appellant in *Pounds* may have been unsure of his responsibilities while going through the pretrial process, appellant in the case at bar knew with certainty that the trial court had ordered him to appear. The execution of appellant's sentence constitutes the final step of the criminal proceedings. Appellant did not appear as required by the court, and by failing to do so, he violated R.C. 2937.29.

We will now address appellant's second assignment of error, which asserts that the trial court erred by failing to find that R.C. 2937.29 is unconstitutionally vague and overbroad. We note first that appellant claims to have raised these issues to the trial court in a *pro se* motion to dismiss the indictment against appellant. Our review of the record indicates that in fact appellant did not raise either a vagueness or overbreadth challenge in that motion. It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 463. To allow appellants to waive a venue argument at trial and then revive it on appeal would frustrate the orderly administration of justice. As the Ohio Supreme Court stated in *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 171, 522 N.E.2d 524, 527:

"The legitimate state interest in orderly procedure through the judicial system is well recognized as founded on the desire to avoid unnecessary delay and to

discourage defendants from making erroneous records which would allow them an option to take advantage of favorable verdicts or to avoid unfavorable ones."

Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process. See, also, *Mark v. Mellott Mfg. Co.* (1995), 106 Ohio App.3d 571, 666 N.E.2d 631; *Snyder v. Snyder* (Aug. 15, 1995), Ross App. No. 94 CA 2068, unreported, 1995 WL 493998; *Reed v. Jordan* (July 31, 1995), Scioto App. No. 94 CA 2229, unreported, 1995 WL 461357; *Ohio Performance, Inc. v. Nelson* (March 7, 1995), Scioto App. No. 94 CA 2226, unreported, 1995 WL 103634.

 Assuming, *arguendo,* that appellant had raised the issues below, we would find no error. As the Ohio Supreme Court noted in *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552, it is well established that all legislative enactments must be afforded a strong presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224; *State v. Klinck* (1989), 44 Ohio St.3d 108, 541 N.E.2d 590; *State v. Tanner* (1984), 15 Ohio St.3d 1, 15 OBR 1, 472 N.E.2d 689. Moreover, if at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions. *Tanner,* at 2, 15 OBR at 1–2, 472 N.E.2d at 690, citing R.C. 1.47. Last, the party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail. *Anderson,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226.

 Appellee's overbreadth argument fails since it is well recognized that the overbreadth doctrine has limited application, and that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Schall v. Martin* (1984), 467 U.S. 253, 268, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207, 220, fn. 18 citing *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113. Because no First Amendment guarantee is impinged upon by R.C. 2937.29, the overbreadth doctrine has no application in the present case.

Appellee also contends that R.C. 2937.29 is unconstitutional in that it is void for vagueness. In *Anderson,* the Ohio Supreme Court unanimously held as follows:

"In order to prove such an assertion, the challenging party must show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. * * *' *Coates v. Cincinnati* (1971), 402 U.S. 611, 614 [91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217]. In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law. Thus, to escape responsibility * * *, appellee must prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably

understand that it prohibited the acts in which he engaged." *Anderson,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226–1227.

A tripartite analysis must be applied when examining the void-for-vagueness doctrine. See *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110; *Grayned v. Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222; *Kolender v. Lawson* (1983), 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903. In *Tanner,* Justice Locher expanded on the three prongs of the vagueness analysis as follows:

"These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language." *Id.,* 15 Ohio St.3d at 3, 15 OBR at 3; 472 N.E.2d at 691.

The prohibition contained in R.C. 2937.29 is made in a general statement: "A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code." R.C. 2937.29. This language is clear and unambiguous. When a defendant is released on a recognizance bond, he or she commits an offense by failing to appear as specified by the court. The defendant in this circumstance has been released from custody with the understanding that he will voluntarily comply with his required return. The average person reading this portion of the statute would have little doubt as to its meaning, nor would a person of ordinary intelligence need to guess as to its application. See *Columbus v. Thompson* (1971), 25 Ohio St.2d 26, 54 O.O.2d 162, 266 N.E.2d 571, syllabus. Under the Ohio Supreme Court's holding in *Anderson,* in order to successfully meet the standard for void for vagueness, it must be demonstrated that the statute is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. * * * ' *Coates v. Cincinnati* (1971), 402 U.S. 611, 614 [91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217]." *Id.,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226. In this context, compliance with R.C. 2937.29 is not impossible, but rather clearly accomplishable. We find that R.C. 2937.29 contains sufficient language to provide the ordinary person with adequate notice and fair warning as to the standard of conduct required by the statute.

The second value advanced by the void-for-vagueness doctrine is the prevention of arbitrary and discriminatory enforcement; hence laws must provide

explicit standards for those who are charged with enforcing them. See *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298–2299, 33 L.Ed.2d at 227–228; *Tanner*, 15 Ohio St.3d at 3, 15 OBR at 2–3, 472 N.E.2d at 690–691. Thus, in order to survive a challenge on vagueness grounds, the statutory language must "define the criminal offense * * * in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858, 75 L.Ed.2d at 909. Moreover, in order to be declared unconstitutionally vague, a statute must be vague in all of its applications, assuming the statute implicates no constitutionally protected conduct. *Anderson, supra*, 57 Ohio St.3d at 173, 566 N.E.2d at 1228, fn. 2. Upon examining R.C. 2937.29, we find that the precision of the statute's language provides constitutionally adequate guidelines for those charged with enforcing it. The language leaves little or no discretion as to the application and enforcement of the statute. When a person free on a recognizance bond fails to appear as ordered, the statute is violated.

The third value which the vagueness doctrine addresses is the concern that fundamental, constitutionally protected freedoms not be unreasonably impinged upon or inhibited. In this regard, the fact that R.C. 2937.29 tangentially touches on the defendant's right to travel does not trigger the application of the void-for-vagueness doctrine because the trial court could refuse to grant bail when the circumstances suggest the defendant might not appear as ordered. A defendant who is granted bail secured by a recognizance bond cannot complain that the order mandating his future return to the court interferes with his right to travel, since his right to so travel is lawfully impinged upon in the first instance by virtue of the charges pending against him.

In summary, assuming that appellant had not waived this argument by failing to raise it below, we would find that R.C. 2937.29 is not unconstitutionally vague. It is apparent that the legislature intended to punish defendants who fail to appear as required after they are released on the good faith assumption that they will so appear. R.C. 2937.29 provides the appropriate notice and fair warning required by the Ohio and United States Constitutions. Moreover, R.C. 2937.29 contains sufficient guidelines to allow law enforcement officials to apply it in an evenhanded manner.

Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error.

## II

In his third assignment of error, appellant argues that the trial court erred when it overruled his motion to dismiss the indictment. Appellant notes that after Adams County Prosecuting Attorney Greg Carroll sought and obtained an indictment from the Adams County Grand Jury, he requested the court to

appoint a special prosecutor. Prosecutor Carroll's request for a special prosecutor provides that his "office is disqualified from prosecuting the proposed Defendant or Defendants herein by the Code of Professional Responsibility." In his brief appellant notes that prior to this case, Prosecutor Carroll's office had twice opted to not participate in appellant's criminal cases because Prosecutor Carroll had represented appellant's wife in a domestic relations case. Thus, appellant contends that the indictment is fatally tainted by the appearance of impropriety. Appellant concludes that the trial court should have granted his motion and dismissed the indictment.

First, our review of the record reveals that Prosecutor Carroll filed a voluntary recusal after the grand jury returned the indictment. At the time Prosecutor Carroll presented evidence to the grand jury, he had not been ordered to refrain from participating in the case.

Second, appellant has failed to show that he was in any way prejudiced by Prosecutor Carroll's involvement with the grand jury proceedings. Appellant cryptically asserts that "Mr. Carroll's office was privy to possible privileged information about Appellant's cases," but does not expand on what privileged information could or might have been misused, nor does he even attempt to take the next step, critical to his argument, of showing that such information was in fact misused. We agree with appellee that appellant was not prejudiced in any manner because (1) no evidence has been presented to indicate any acts of misconduct were committed in presenting evidence to the grand jury, and (2) the evidence involved in the case *sub judice* is uncontroversial and elementary. The only information necessary to obtain an indictment is that appellant failed to appear for the execution of his sentence.

We again note that appellant has presented no evidence that Prosecutor Carroll harbored personal feelings against appellant or that he used any privileged information before the grand jury. The fact that Prosecutor Carroll voluntarily asked the court to appoint a special prosecutor does not, standing alone, substantiate appellant's claim that Carroll was clearly biased, that such bias tainted the indictment, and that the indictment must be dismissed.

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

## III

In his fourth assignment of error, appellant asserts that the trial court denied his statutory rights to a speedy trial. During the proceedings below and on appeal, appellant focuses his speedy trial argument on the trial court's "lack of diligence in providing counsel." [3] Appellant concedes that generally the delay for purposes of securing counsel tolls the operation of the speedy trial statute.

---

3. A chronology of the pertinent events that occurred in the instant case proceeds as follows:

Appellant asserts, however, citing *Columbus v. Bonner* (1981), 2 Ohio App.3d 34, 2 OBR 37, 440 N.E.2d 606, that a trial court's failure to appoint counsel in a timely fashion should not toll the speedy trial time limit.

Appellant notes that the trial court initially appointed counsel to represent him. On the morning of trial on November 3, 1994, appellant informed the trial court that he did not want to proceed represented by his current counsel. Appellant explained that he had filed disciplinary complaints and other legal actions against his counsel. Appellant further informed the court that he wanted time so that he and his family could raise funds and retain counsel. The trial court granted appellant's request to discharge his counsel, and pursuant to appellant's request, continued the case so that appellant and his family could attempt to raise funds and retain new counsel to represent appellant. The trial court cited R.C. 2945.72(H) in its entry.

Subsequently, appellant informed the court that he was having difficulty securing legal representation. On December 2, 1994, appellant filed a motion

| DATE | EVENT |
|------|-------|
| December 17, 1993 | The trial court accepted appellant's guilty plea to the underlying felony. The court stayed execution of sentence until January 19, 1994 at 9:00 a.m. at which time appellant was ordered to report to the Athens County Sheriff's Office for the execution of his sentence. |
| January 19, 1994 | Appellant failed to report to the sheriff's office for the execution of his sentence. |
| February 3, 1994 | Appellant indicted for escape and for failing to appear. |
| February 10, 1994 | Appellant arrested. Trial scheduled for July 13, 1994. (270 speedy trial days remaining.) |
| May 4, 1994 | Trial court appointed counsel to represent appellant. (187 speedy trial days remaining.) |
| May 5, 1994 | Appellant filed a motion to dismiss both counts of the indictment (escape and failure to appear). Motion tolls operation of speedy trial statute (186 speedy trial days remaining.) |
| June 9, 1994 | Trial court granted motion to dismiss with respect to count one of the indictment. Speedy trial clock starts. (186 speedy trial days remaining.) |
| July 14, 1994 | Appellant filed a motion for a continuance. Motion tolls operation of speedy trial statute. (165 speedy trial days remaining.) |
| July 22, 1994 | Court filed entry granting continuance of trial from July 13, 1994 to November 3, 1994. (165 speedy trial days remaining.) |
| November 3, 1994 | Case came on for trial and appellant advised the court that he did not wish to be represented by his appointed counsel and that he needed additional time to retain counsel. Appellant's brief concedes that the speedy trial clock should be tolled on November 3, 1994. The trial court's November 15, 1994 "Entry Continuing Trial Date" notes that the speedy trial time is tolled pursuant to R.C. 2945.72(H). (165 speedy trial days remaining.) |
| December 2, 1994 | Appellant sent letter to the court requesting additional time to retain counsel. (165 speedy trial days remaining.) |
| April 11, 1995 | Trial court appointed counsel to represent appellant. |

with the court requesting additional time to retain counsel. Appellant's motion further provided as follows:

"Please allow me at least 30 more days to get the funds together or at the 30 day mark 1/05/95 please appoint a court attorney for me."

Thus, appellant requested "at least" a thirty-day continuance in order to provide time to secure the funds to retain counsel. Additionally, appellant's motion did not contain a certificate of service indicating that appellant had forwarded a copy of the motion to appellee.

On April 11, 1995, the trial court once again appointed counsel to represent appellant. Other than the December 2, 1994 motion, appellant did not file any additional motions or otherwise communicate with the court making any request for appointed counsel.

The statutory speedy trial provisions constitute a rational effort to enforce the constitutional right to a speedy trial of an accused charged with the commission of a crime. The courts of this state shall strictly enforce the right to a speedy trial. *State v. Pachay* (1980), 64 Ohio St.2d 218, 18 O.O.3d 427, 416 N.E.2d 589. Mixed questions of law and fact are generally present when an appellate court reviews speedy trial issues. We, as a reviewing court, accept the facts as found by the trial court on some competent, credible evidence, but freely review the application of the law to the facts. *State v. Howard* (Mar. 4, 1994), Scioto App. No. 93 CA 2136, unreported, 1994 WL 67688. An accused presents a prima facie case for discharge based upon a violation of speedy trial limitations by charging in a motion to dismiss that he or she was held solely on the pending charge and for a time exceeding the R.C. 2945.71 time limits. *State v. Butcher* (1986), 27 Ohio St.3d 28, 27 OBR 445, 500 N.E.2d 1368; *State v. Reuschling* (1986), 30 Ohio App.3d 81, 30 OBR 138, 506 N.E.2d 558. The burden then shifts to the state to show that the R.C. 2945.71 limits have not been exceeded by demonstrating that the time limit had been properly extended pursuant to R.C. 2945.72. *Butcher; Reuschling.*

In *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 55–56, 661 N.E.2d 706, 707, the court discussed an accused's rights to a speedy trial as follows:

"Ohio's speedy trial statute was implemented to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and in Section 10, Article I of the Ohio Constitution. *State v. Broughton* (1991), 62 Ohio St.3d 253, 256, 581 N.E.2d 541, 544; see *Columbus v. Bonner* (1981), 2 Ohio App.3d 34, 36, 2 OBR 37, 39, 440 N.E.2d 606, 608. The constitutional guarantee of a speedy trial was originally considered necessary to prevent oppressive pretrial incarceration, to minimize the anxiety of the accused, and to limit the possibility that the defense will be impaired. *State*

*ex rel. Jones v. Cuyahoga Cty. Ct. of Common Pleas* (1978), 55 Ohio St.2d 130, 131, 9 O.O.3d 108, 109, 378 N.E.2d 471, 472.

"Section 10, Article I of the Ohio Constitution guarantees to the party accused in any court 'a speedy public trial by an impartial jury.' 'Throughout the long history of litigation involving application of the speedy trial statutes, this court has repeatedly announced that the trial courts are to strictly enforce the legislative mandates evident in these statutes. This court's announced position of strict enforcement has been grounded in the conclusion that the speedy trial statutes implement the constitutional guarantee of a public speedy trial.' (Citations omitted.) *State v. Pachay* (1980), 64 Ohio St.2d 218, 221, 18 O.O.3d 427, 429, 416 N.E.2d 589, 591. We are acutely conscious of the magnitude of the rights we interpret today. We have also previously explained, however, that 'the prescribed times for trial set forth in R.C. 2945.71 are not absolute in all circumstances, but a certain measure of flexibility was intended by the General Assembly by the enactment of R.C. 2945.72, wherein discretionary authority is granted to extend the trial date beyond the R.C. 2945.71 time prescriptions. *State v. Wentworth* (1978), 54 Ohio St.2d 171, 173, 8 O.O.3d 162, 163–164, 375 N.E.2d 424, 426."

Ohio's speedy trial statute, R.C. 2945.71, provides that persons charged with felonies must be brought to trial within two hundred seventy days after arrest. R.C. 2945.71(C)(2). Each day spent in jail awaiting trial on the pending charge generally counts as three days. R.C. 2945.71(E).[4] However, when appellant spent time in the Adams County Jail, he was not only awaiting trial on the charges in the case *sub judice*, but he also was serving his sentence for the kidnapping and gross sexual imposition charges. See R.C. 2945.71(E). The Ohio Supreme Court has held that the R.C. 2945.71(E) triple-count speedy trial provision is applicable only to those defendants held in jail in lieu of bail solely on the pending charges. *State v. Brown* (1992), 64 Ohio St.3d 476, 597 N.E.2d 97; *State v. Ladd* (1978), 56 Ohio St.2d 197, 10 O.O.3d 363, 383 N.E.2d 579; *State v. MacDonald* (1976), 48 Ohio St.2d 66, 2 O.O.3d 219, 357 N.E.2d 40, paragraph one of the syllabus. Thus, we find that the triple-count provision does not apply to appellant.

---

**4.** R.C. 2945.71 provides:

"(C) A person against whom a charge of felony is pending:
" * * *
"(2) Shall be brought to trial within two hundred seventy days after his arrest.
" * * *
"(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail *on the pending charge* shall be counted as three days." (Emphasis added.)

 Under the facts presented in the case *sub judice*, we cannot say that the trial court's actions constituted a lack of diligence in providing counsel. Appellant's request to discharge his first appointed counsel, coupled with appellant's request for a continuance in order to retain counsel, tolled the operation of the speedy trial statute. R.C. 2945.72(C) and (H).[5] *State v. Roquemore* (1993), 85 Ohio App.3d 448, 620 N.E.2d 110. We find that the trial court, in light of the events that occurred below, acted reasonably and diligently in appointing counsel to represent appellant.

We disagree with appellant that the instant case is similar to *Bonner*. In *Bonner*, the trial court ordered that counsel be appointed. Approximately two months later, counsel was in fact appointed, and the trial court ordered a continuance in order to allow counsel time to prepare for trial. The *Bonner* court found that the delay resulted from the trial court's lack of diligence in providing counsel and that the delay should not toll the operation of the statute. The court noted that the trial court simply failed to "follow through in appointing counsel."

In the instant case, the trial court appointed counsel during the early stages of the proceedings. The speedy trial clock was suspended, however, after appellant discharged his appointed counsel and requested a continuance in order to retain counsel.

 We hasten to note, however, that our opinion is not intended to establish a fixed time standard by which a court's alleged lack of diligence in appointing counsel for an indigent defendant can be measured. To the contrary, each case

---

**5.** R.C. 2945.72 provides:

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

"(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

"(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

"(C) *Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;*
"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
"* * *

"(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

"(H) *The period of any continuance granted on the accused's own motion,* and the period of any reasonable continuance granted other than upon the accused's own motion." (Emphasis added.)

must be decided in light of its own unique facts. We agree with appellant that generally a substantial delay in appointing counsel will not result in a finding that the operation of the speedy trial statute had been tolled during the delay. In the case at bar, however, appellant's discharge of his appointed counsel and his request for a continuance in order to retain counsel tolled the speedy trial clock.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

STEPHENSON, P.J., and KLINE, J., concur.