OPINION.
{¶ 1} Defendant-Appellant James M. Cline appeals from his convictions for four counts of unauthorized use of a computer; two counts of menacing by stalking; two counts of conspiracy to commit aggravated arson; one count of criminal mischief; one count of intimidation of a crime witness; and 67 counts of telecommunications harassment, having previously been convicted of telecommunications harassment. He presents eight assignments of error on appeal.
 {¶ 2} Cline's first challenges are to the trial court's denial of his motion for a new trial and the lack of written waiver of counsel. He then presents three attacks on his sentence. Cline next insists that he was denied his right to a speedy trial. Finally, Cline claims that his convictions are against the manifest weight of the evidence and that they are not supported by sufficient evidence.
 {¶ 3} We conclude that Cline was not denied his right to a speedy trial. However, we agree that one of Cline's convictions for menacing by stalking is not supported by sufficient evidence and that the necessary written documentation of Cline's waiver of his right to counsel was not filed in the trial court below. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.
 I {¶ 4} In the past Cline was convicted of harassing women who had declined to pursue relationships with him, and the trial court ordered probation. However, his probation was later revoked, and Cline was sent to prison. After his release, Cline embarked upon a series of actions that resulted in the charges contained in the two indictments involved in this case.
 {¶ 5} Between December, 1999, and the beginning of 2000, Cline met Robin Rabook, Betty Jean Smith, and Sonja Risner in internet chat rooms. After several dates with each of the three women, they declined further contact with him. As a result, Cline began to harass the women by e-mail and by telephone, at all hours of the day and night. In an apparent attempt to take revenge against the three women, Cline used his knowledge of computers and the internet, along with the women's personal information, to create havoc in their personal lives. For example, Cline locked the women out of their internet accounts, and he scheduled dates for the women, unbeknownst to them. He used their names to send vulgar messages to others, and he sent vulgar messages about the women to others.
 {¶ 6} Cline also stalked Sonja. In September, 2000, Cline solicited the assistance of another woman whom he met on the internet to burn down the house where Sonja lived. That woman, Gina White, warned Sonja of sabotage to her car, and a mechanic found a mothball in the gas tank. Cline also began an intensive program of telephone harassment of Sonja. He called her repeatedly at home, and after she changed her number, he called her at work. He then began to call people all over Urbana trying to get Sonja's new phone number. Cline also ordered magazine subscriptions in her name, caused deliveries to be made to her home, advised realtors that she wanted to sell her home, and arranged to have her car towed. Cline gave Sonja's work number to many people, encouraging them to call her there. During a two-month period, Cline made over 3,000 phone calls.
 {¶ 7} While Cline was in jail in Indiana awaiting extradition to Ohio, he began writing Sonja's personal information and physical description in books in the jail, and encouraging prisoners to write to her, which several of them did. During this time, Cline continued to pursue plans to burn down her house.
 II {¶ 8} Cline's second assignment of error is as follows:
 {¶ 9} "The trial court erred in permitting the appellant to represent himself where issues of competency existed and appellant's legal counsel, ordered to remain as `legal advisor' was ordered to do nothing to assist the appellant."
 {¶ 10} In his second assignment of error, Cline claims that although he was found competent to stand trial, the court should also have considered whether he was competent to make the decision to waive his right to counsel and to represent himself at trial. Cline also points out that his waiver of counsel was not made in writing, as required by Crim.R. 44(C). Because Cline did not waive his right to counsel in writing, we must sustain his second assignment of error.
 {¶ 11} Criminal Rule 44(C) clearly states that a "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing." It is undisputed that Cline's was a "serious offense case." Crim.R. 2(C). Moreover, this Court has previously held that a lack of a written waiver, required by Crim.R. 44(C), is a fundamental error that requires reversal. State v. Mathers (Aug. 9, 2002), Clark App. No. 2000-CA-92, citing State v. Ware (Dec. 30, 1999), Montgomery App. No. 17610, in turn citing State v. Dyer (Dec. 31, 1996), Greene App. No. 96 CA 39.
 {¶ 12} In the case before us, the trial court judge did a commendable, thorough job of questioning Cline regarding his desire to waive his right to counsel and to represent himself, announced at the outset of the trial. Unfortunately, however, no written waiver was executed or filed. Because Cline's waiver of counsel was not made in writing, as required by Crim.R. 44(C), his second assignment of error is sustained.
 III {¶ 13} Cline's first assignment of error is as follows:
 {¶ 14} "The trial court erred in refusing to grant appellant a new trial where a juror was a convicted felon."
 {¶ 15} Cline's third assignment of error is as follows:
 {¶ 16} "The trial court abused its discretion in sentencing the appellant to consecutive terms of incarceration when it failed to make required findings and state reasons pursuant to R.C. 2929.14
and 2929.19."
 {¶ 17} Cline's fourth assignment of error is as follows:
 {¶ 18} "The trial court abused its discretion when it imposed a disproportionate sentence upon appellant."
 {¶ 19} Cline's fifth assignment of error is as follows:
 {¶ 20} "The sentence imposed upon appellant violated the prohibition of cruel and unusual punishment as set forth by theEighth Amendment to the U.S. Constitution and Article I, § 9 of the Ohio Constitution."
 {¶ 21} Cline's eighth assignment of error is as follows:
 {¶ 22} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 23} Our decision sustaining Cline's second assignment of error requires reversal of his conviction and a remand for a new trial, thereby rendering these assignments of error moot. Accordingly, Cline's first, third, fourth, fifth, and eighth assignments of error are overruled as moot.
 IV {¶ 24} Cline's sixth assignment of error is as follows:
 {¶ 25} "The trial court erred by failing to dismiss the case because the state did not bring defendant to trial within the time limits set forth in Ohio Revised Code 2945.71 et seq."
 {¶ 26} In his sixth assignment of error, Cline argues that his convictions must be reversed, and he must be discharged, because the State failed to bring him to trial within the statutory speedy trial time limit. We disagree.
 {¶ 27} When a defendant is incarcerated, as Cline was, the State has ninety days in which to bring him to trial. R.C. §§ 2945.71(C)(2) (E). The statutory time for speedy trial begins to run at the date of arrest, not the date of the offense or the date of the indictment. See, e.g., State v. Brock (May 22, 1991), Montgomery App. No. 12227. Thus, Cline's speedy trial time began to run upon his arrest on January 17, 2001. However, time was immediately tolled until his extradition on April 11, 2001, because Ohio speedy trial provisions do not apply to a person who is incarcerated in another state pending extradition to Ohio, provided that the prosecution exercises reasonable diligence to secure his availability. R.C. § 2945.72(A). There has been no allegation that the prosecutor was less than reasonably diligent in seeking extradition. Moreover, the day of arrest is not counted in computing speedy trial time. State v. Lautenslager (1996), 112 Ohio App.3d 108, 109-10,677 N.E.2d 1263, citing R.C. § 1.14; Crim.R. 45(A); State v.Broughton (1991), 62 Ohio St.3d 253, 262, 581 N.E.2d 548; State v.Cutcher (1978), 56 Ohio St.2d 383, 384 N.E.2d 275. Accordingly, the first nine days actually counted against the State were the days from April 12, 2001, through Cline's initial arraignment on April 20, 2001.
 {¶ 28} The time that it takes to appoint trial counsel also tolls the speedy trial time. State v. Hiatt (1997), 120 Ohio App.3d 247,259-63, 697 N.E.2d 1025, citing R.C. § 2945.72(C). Cline's arraignment was continued from April 20th until April 25th, while counsel was contacted on Cline's behalf. Therefore, the days until counsel was actually appointed at the arraignment on April 25, 2001, are not counted. At the pretrial conference on April 26, 2001, defense counsel requested a continuance until May 10, 2001. Because any continuance granted at the defense's request extends the speedy trial time, only April 26th can be counted against the State. R.C. § 2947.72(H).
 {¶ 29} Seven additional days are counted from the pretrial conference on May 10, 2001, until the issuance of the second indictment on May 17, 2001. Thus, at that point there were 17 days counted against the initial indictment. When additional criminal charges arise from facts different from the original charges, or when the State did not know of those facts at the time of the initial indictment, the commencement of the speedy trial time on the new charges does not relate back to the initial charges. State v. Baker, 78 Ohio St.3d 108, 1997-Ohio-229, syllabus. Thus, the time from May 17th to May 29th counts as 12 days against both indictments, for a total of 29 days against the first indictment and 12 against the second.
 {¶ 30} On May 29, 2001, defense counsel requested leave to file a plea of not guilty by reason of insanity, and defense counsel filed a motion to suppress. Both motions toll speedy trial time until the court rules on them. R.C. §§ 2945.71(E) 2945.72(B) (E); Statev. Holland (Nov. 2, 2001), Montgomery App. No. 18556; State v. Palmer,84 Ohio St.3d 103, 1998-Ohio-507, paragraphs one and two of the syllabus; State v. Walker (1976), 46 Ohio St.2d 157, 346 N.E.2d 687, paragraph two of the syllabus, approved and followed in State v. Spratz
(1979), 58 Ohio St.2d 61, 388 N.E.2d 751, syllabus. Cline withdrew his NGRI plea on November 21, 2001, and the trial court denied his motion to suppress on November 29, 2001. Thus, time once again began to run against the State on November 29, 2001.
 {¶ 31} Cline's trial began on January 8, 2002. Thus, an additional 40 days are counted against the State. This gives a total of 69 days against the first indictment and 52 days against the second indictment. Both totals are well within the 90 days allowed for the State to bring an incarcerated defendant to trial. Therefore, Cline's right to a speedy trial was not violated.
 {¶ 32} Accordingly, Cline's sixth assignment of error is overruled.
 V {¶ 33} Cline's seventh assignment of error is as follows:
 {¶ 34} "Appellant's convictions were not supported by sufficient evidence."
 {¶ 35} In his seventh assignment of error, Cline claims that his convictions for one count of menacing by stalking; 67 counts of telecommunications harassment; and four counts of unauthorized use of a computer are not supported by sufficient evidence. We agree with this argument only as it applies to the menacing by stalking charge.
 {¶ 36} "When a defendant challenges the legal sufficiency of the state's evidence, `the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781.
 {¶ 37} As to the counts of unauthorized use of a computer under R.C. § 2913.04(B), the State was required to prove that Cline knowingly gained access, or attempted to gain access, to the computers or computer systems of Sonja Risner, Robin Rabook, and Betty Jean Smith without consent. These charges stemmed from Cline's use of the three women's computers or computer systems in order to send e-mail and offline messaging in their names. The State introduced the testimony of the three victims, explaining that they had not sent any of the messages in question. The State also offered documented evidence that the text from the offline and e-mail messages was found on Cline's computer. We conclude that the State presented sufficient evidence to support Cline's convictions for unauthorized use of a computer.
 {¶ 38} In order to prove telecommunications harassment under R.C. § 2917.21(B), the State had to prove that Cline made or caused to be made a telecommunication, or permitted a telecommunication to be made, from a telecommunications device under his control, with purpose to abuse, threaten, or harass another. The State offered evidence that Cline had made over 3,000 phone calls, most of which were intended to induce citizens of Urbana to locate and provide Sonja Risner's new telephone number to him. Many of these citizens, who knew neither Cline nor Sonja Risner, were harassed by these calls and called the police to complain about them. After consideration of all of the evidence, we conclude that the State presented sufficient evidence to support Cline's convictions for telecommunications harassment.
 {¶ 39} Finally, in regards to the count of menacing by stalking under R.C. § 2903.221(A)(B)(2)(c), the State had to show that Cline engaged in a pattern of conduct that knowingly caused another to believe that he would cause physical harm or mental distress to the other, and that in committing the offense, Cline trespassed on the land or premises where the victim lives, works, or attends school. We agree with Cline that the plain language of the statute requires that Cline be the one to commit the trespass, not a third party, who is not acting in concert with Cline to carry out a criminal purpose. In this case, although there is evidence that Cline manipulated others into trespassing,[1] there is no evidence that Cline himself trespassed. Accordingly, there is insufficient evidence to support Cline's conviction for menacing by stalking, as charged in the first indictment.
 {¶ 40} Because Cline's conviction for menacing by stalking is not supported by sufficient evidence, that conviction must be reversed and vacated. Cline's seventh assignment of error is sustained in part, and overruled in part.
 VI {¶ 41} Cline's second assignment of error having been sustained, and his seventh assignment of error having been sustained in part, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
GRADY and YOUNG, JJ., concur.
[1] Cline sent messages to other men, purporting to be from his female victim, inviting the men to her home for the purposes of sexual intercourse. Cline contends that even the men whom he manipulated into arriving at the victim's door were not committing trespass, since they simply walked up to the victim's door and knocked or rang the doorbell. In view of our conclusion that Cline, or others acting in concert with Cline, would have to commit trespass in order to violate the statute, we find it unnecessary to determine whether the actions of the men whom Cline manipulated would themselves constitute trespass.