OPINION *Page 2 
{¶ 1} Defendant-appellant James A. Reading appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on one count of breaking and entering, in violation of R.C. 2911.13(A) and/or (B), a felony of the fifth degree; one count of felony vandalism (over $500.00), in violation of R.C. 2909.05 (B)(2), a felony of the fifth degree; and one count of felony theft (over $500.00) in violation of R.C. 2913.02(A)(1), a felony of the fifth degree, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On November 17, 2006, the Licking County Grand Jury indicted Appellant on the aforementioned charges. The trial court appointed counsel on behalf of Appellant. Appellant appeared before the trial court for arraignment on November 28, 2006, at which time he entered a plea of not guilty to the charges. The trial court released Appellant on a $5000.00 recognizance bond. The matter proceeded to jury trial on May 23, 2007.
 {¶ 3} At trial, Officer Erin Wilson with the Johnstown Police Department testified she investigated a break-in and vandalism at Johnstown High School in August, 2005. The investigation revealed a picnic table outside the rear door of the school had been moved in front of the door. It appeared the individuals who entered the school had jumped from the picnic table onto the roof and then used a door on the roof to obtain access into the building. Shoe scuffmarks were found on the front of a trophy case which is located directly below the doorway from the roof. A tile panel from the ceiling *Page 3 
above the trophy case was missing. Additionally, the wire to the security camera in that area had been cut.
 {¶ 4} In the main hallway of the school, Officer Wilson found several empty fire extinguishers which had been released into the hallway. The area was filled with fumes. Officer Wilson discovered two sets of rubber gloves and a mask in the hallway, which she sent to the Bureau of Criminal Investigation for DNA analysis. The vandals attempted to pry open a pencil vending machine as well as the door to the guidance counselor's office. Inside the boys' restroom, the words "Fuck school" were spray painted onto the wall. Spray paint cans were found on the floor of the janitor's closet. In the girls' restroom, a feminine hygiene machine had been broken open and feminine hygiene products were strewn over the floor. A fire extinguisher had also been released in that restroom. A wall mirror had been shattered. Officer Wilson stated the boys' and girls' locker rooms were found to be in the same state of disarray with equipment and other items scattered everywhere and a fire extinguisher released therein. Four buildings on the school property had been spray painted. The building which houses the athletic equipment had been broken into with the entire latch and bar of the lock having been pried off the door. Officer Wilson and the principal viewed security camera footage which captured the vandalism in progress.
 {¶ 5} Kim Jakeway, the principal of Johnstown High School, testified he has been principal of the school for two years, but has been employed there for fourteen years working as a coach, athletic director, teacher, and dean of students. Jakeway stated he arrived at the high school at 5:30am on Saturday, August 6, 2005, intending to paint a classroom for one of his teachers. When he entered the building through the *Page 4 
main entrance, there was so much smoke in the air, he believed the building was on fire. The principal called 9-1-1 immediately and waited for an officer to arrive.
 {¶ 6} After Officer Wilson arrived, the two investigated the damages, then proceeded to Jakeway's office to view the security films. Jakeway reiterated the substance of Officer Wilson's testimony regarding what had occurred in the building. Jakeway stated he remained at the school most of the day trying to piece together the situation. During that time, he reviewed the security videos again. The security videos revealed one of the perpetrators was wearing a hat, and the other wore goggles. The principal acknowledged he was never able to see the face of the person wearing the goggles as that individual also wore a dust mask around his nose and mouth. Jakeway explained he immediately had his suspicion as to the identity of the suspect in the hat upon viewing the video with Officer Wilson. Jakeway determined Appellant was the individual wearing the hat based upon his hair color and facial features.
 {¶ 7} On cross-examination, defense counsel asked the principal why he failed to include Appellant's name in the statement he gave to police. Defense counsel then asked Jakeway why he did not tell police he thought Appellant was one of the suspects until Appellant's name had been suggested to him. Jakeway answered, from the beginning, he believed Appellant was one of the suspects, but had just not included that information in his witness statement. On re-direct, Jakeway noted he distinctly remembered mentioning Appellant's name to police on the day of the incident. Principal Jakeway knew Appellant prior to the offense as he had coached Appellant in football in 1997, and would see Appellant at practice 3-4 times/week and often drove him home. In addition, Appellant had been a student at Johnstown High School for two years. *Page 5 
 {¶ 8} Prior to the State's calling its next witness, the trial court recessed for lunch. Before the afternoon session commenced, defense counsel advised the trial court one of the jurors had approached him in the hallway, repeatedly asking him his name. Defense counsel advised the trial court he had tried his best to indicate using hand gestures he was unable to speak, but the juror would not accept that as an answer. Defense counsel informed the trial court he then politely told the juror he was not permitted to speak with her. The juror was brought in for questioning, and the trial court found the incident would not hurt her ability to be fair and impartial.
 {¶ 9} Also during that recess, defense counsel made an oral motion in limine relative to Appellant's juvenile record. Specifically, defense counsel asked Gayle Lunsford, a probation officer with the Licking County Juvenile Court, not be permitted to testify to the fact she is a probation officer and her contact with Appellant was through her capacity as a juvenile probation officer. The trial court granted the motion, instructing the State to introduce Lunsford as a County employee who knew Appellant in the course of her work.
 {¶ 10} Gayle Lunsford subsequently testified she was an employee of Licking County and had had contact with Appellant for approximately six months, seeing him approximately three or four times/month. After learning about the vandalism at Johnstown High School, Lunsford proceeded to the school to speak with Principal Jakeway. Lunsford viewed the surveillance video and believed one of the subjects to be Appellant. Lunsford secured a more recent photo of Appellant in order to confirm her suspicions. *Page 6 
 {¶ 11} Appellant called his mother, cousin, and sister to testify on his behalf. All three witnesses testified they had viewed the surveillance video and did not believe the individual identified as Appellant by the State's witnesses was actually Appellant.
 {¶ 12} After hearing all the evidence and deliberations, the jury found Appellant guilty of the charges. The trial court immediately proceeded to sentencing. The trial court sentenced Appellant to a period of nine months imprisonment on each count, and ordered the sentences be served consecutively. The trial court ordered Appellant to pay costs as well as $61,000.00 in restitution to the Johnstown Monroe School District. Appellant filed a Motion for New Trial on June 14, 2007, which the trial court denied as untimely.
 {¶ 13} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 14} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} "II. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."
 I {¶ 16} In his first assignment of error, Appellant challenges the jury's verdict as being against the manifest weight of the evidence.
 {¶ 17} In State v. Wilson, 713 Ohio St.3d 382, 2007-Ohio-2202,865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows: *Page 7 
 {¶ 18} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive-the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence.Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 19} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O .3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. * * * Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed. C.E. Morris Co.
Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the *Page 8 
civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989." State v.Wilson, 713 Ohio St.3d at 387-88, 2007-Ohio-2202 at ¶ 25-26,865 N.E.2d at 1269-1270.
 {¶ 20} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, supra,78 Ohio St.3d at 387. (quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 21} In Thompkins, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at para. 3 of syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at para. 4 of syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 22} Appellant claims there was no physical evidence connecting him to the break-in. The only evidence presented by the State was the surveillance videos and the identification of Appellant by Principal Jakeway and Gayle Lunsford. Appellant submits, although Principal Jakeway testified he initially suspected Appellant was one of the *Page 9 
individuals on the surveillance video, the principal had not seen Appellant since he was 14 years old in 1997. Appellant maintains Jakeway's identification was merely a guess and the unreliability of the identification was evident as Jakeway failed to identify Appellant on the police statement he gave immediately after discovering the break-in. Additionally, Appellant argues Gayle Lunsford's testimony was, in essence, impermissible opinion testimony which misdirected and mislead the jury. Appellant adds, although Lunsford's position was not revealed to the jury, it was highly probable the jury would guess she worked for law enforcement in some capacity or another, and from that, the jury would draw impermissible inferences.
 {¶ 23} At trial, the prosecutor asked Principal Jakeway, "When you first looked at the recordings of the suspect, were you able to tell who it was?" Tr. at 110. Jakeway answered, "I had my suspicion when I first looked at it. To me it just popped right out." Id. Jakeway was shown an image, which was admitted as State's Exhibit 1, and explained he determined the individual was Appellant based upon the red hair, as well as the nose and the eyes. On cross-examination, Jakeway explained he did not inform police he believed Appellant was one of the suspects despite the fact Appellant immediately came to mind as he watched the surveillance video because "It was just aforethought * * * a guess on my part." Tr. at 127.
 {¶ 24} In reading the transcript of Jakeway's trial testimony, we find Jakeway's labeling his identification of Appellant as a "guess" referred to his reaction after initially viewing the surveillance video. In fact, an hour or two after giving his statement, Jakeway suggested Appellant to police. *Page 10 
 {¶ 25} With respect to Gayle Lunsford's identification, Appellant takes issue with the fact she used a comparison of a still image and the surveillance video to reach her conclusion. Appellant claims Lunsford's identification of him as the perpetrator utilizing a unscientific comparison constituted an impermissible opinion. Further, Appellant submits Lunsford's testimony tainted the trial because the jury could reasonably infer she worked in some type of law enforcement capacity and, by relating this information to the jury, he was prejudiced.
 {¶ 26} The jury had the opportunity to view the surveillance video as well as assess the credibility of the witnesses. Upon review of the entire record, we find there was sufficient, competent and credible evidence to support the jury's conclusion Jakeway and Lunsford properly identified Appellant as the perpetrator. Accordingly, we find the verdict was not against the manifest weight of the evidence.
 {¶ 27} Appellant's first assignment of error is overruled.
 II {¶ 28} In his second assignment of error, Appellant raises an ineffective assistance of counsel claim.
 {¶ 29} The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such *Page 11 
that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case.Bradley, 42 Ohio St.3d at 143, 538 N.E.2d 373 (citingStrickland, 466 U.S. at 697.) We note that a properly licensed attorney is presumed competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164; State v. Calhoun (1999), 86 Ohio St.3d 279,714 N.E.2d 905. Reviewing courts must refrain from second-guessing strategical decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965.
 {¶ 30} Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning the trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. We note that there are numerous avenues in which counsel can provide effective assistance of counsel in any given case. State v. Gales (Nov. 22, 2000), Lorain App. No. 00CA007541, unreported, 2000 WL 1729454; State v.Clayton (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.
 {¶ 31} Appellant predicates his argument on trial counsel's failure to request a mistrial based upon juror misconduct; failure to object to Lunsford's identification and non-expert witness testimony; failure to move the trial court to waive court costs due to Appellant's indigency; and failure to make a Crim. R. 29 motion for acquittal. *Page 12 
 Juror Misconduct {¶ 32} During a recess, Juror No. 9 approached defense counsel and inquired of his name. Counsel attempted to indicate to the juror without words he could not speak to her. However, the juror was insistent, and defense counsel ultimately communicated with her that he could not speak to her. Defense counsel brought the matter to the attention of the trial court. The trial court inquired of the juror as to whether the incident would hurt her ability to be fair and impartial. The juror responded, "Okay".
 {¶ 33} We do not find trial counsel's failure to move for a mistrial following this incident rises to the level of ineffective assistance of counsel, nor do we find the juror's behavior in this case rises to the level of misconduct sufficient to demonstrate prejudice. The juror simply wanted to learn defense counsel's name, and in no way expressed any bias toward either party. Because Appellant has failed to establish the juror was biased or he suffered prejudice as a result of the short conversation between the juror and defense counsel, we find Appellant cannot satisfy the second prong of the Strickland Test.
 403(B) Identification and Non-expert Witness Testimony {¶ 34} Appellant contends trial counsel was ineffective for failing to object to the use and admission of State's Exhibit No. 14, a photograph of Appellant Gayle Lunsford used to establish Appellant's identify as one of the suspects.
 {¶ 35} Evid. R. 403(B) provides:
 {¶ 36} "Although relevant, evidence may be excluded if its probative value is substantially value is outweighed by considerations of undue delay or presentation of needless cumulative evidence." Appellant has failed to present any argument *Page 13 
demonstrating the offering of this exhibit created any type of delay or was cumulative to the other evidence presented. As such, trial counsel had no reason to object to the evidence on Evid. R. 403(B) grounds.
 {¶ 37} Assuming, arguendo, trial counsel was deficient for failing to object to the exhibit, we find Appellant has failed to demonstrate prejudice from the admission of this exhibit. Two witnesses identified Appellant as one of the vandals. Additionally, the jury watched the surveillance video themselves. Appellant cannot establish the jury rested its determination of his guilt based upon State's Exhibit No. 14.
 Court Costs and Indigency {¶ 38} Appellant contends trial counsel was ineffective for failing to object to the trial court's imposition of court costs. Appellant submits trial counsel's failure to object at the time of sentencing waived the issue on appeal. Assuming, arguendo, trial counsel was ineffective for failing to object to the trial court's imposition of court costs and restitution, we find Appellant cannot establish the trial court would have sustained the objection and waive costs and restitution had trial counsel so objected. Appellant and his codefendant committed $61,000 worth of damage to the high school and it is highly unlikely the trial court would have been inclined to waive costs and restitution.
 Crim. R. 29 Motion {¶ 39} Appellant also argues trial counsel was ineffective for failing to make an oral motion for acquittal pursuant to Crim. R. 29.
 {¶ 40} Crim. R. 29(A) provides:
 {¶ 41} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one *Page 14 
or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 42} This Court has previously held: "The failure of trial counsel to move for a judgment of acquittal under Crim. R. 29 does not constitute ineffective assistance of counsel when the State's case-in-chief links the defendant to the crimes of which he is accused."State v. Adkins, Morrow App. No. CA-906, 2002-Ohio-3942, at para. 29, citing State v. Mills (1991), 73 Ohio App.3d 27, 35, 595 N.E.2d 1045.
 {¶ 43} As discussed in assignment of error one, supra, there was competent, credible evidence to support Appellant's conviction. Accordingly, we find trial counsel's failure to make a motion for acquittal did not constitute ineffective of counsel.
 {¶ 44} For the reasons set forth above, we overrule Appellant's second assignment of error.
 {¶ 45} The judgment of the Licking County Court of Common Pleas is affirmed.
Hoffman, P.J., Gwin, J., Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1