OPINION
{¶ 1} Appellant, Tramaine Jackson, appeals from his conviction by jury and subsequent sentence for two counts of complicity to trafficking in drugs, with juvenile specifications, and two counts of possession of drugs. For the following reasons, we reverse and remand for retrial.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} On September 15, 2006, a SWAT team forcibly entered a residence located at 4803 Strong Avenue in Ashtabula to execute a "no-knock" search warrant for cocaine and to search for other items related to drug trafficking. After the drug sweep, four individuals were charged, including Mr. Jackson. A young girl, nine years of age, was sitting on the couch in the living room when the officers burst through the door. She was later identified as the daughter of one of the defendants, who ran the drug trafficking ring and resided in the home.
 {¶ 4} At the time of the sweep, Mr. Jackson was in the kitchen, with another individual, Jawann Evans. Mr. Jackson was lying on the floor, per the officers' request, with $483 scattered around and underneath him. On the kitchen table was a large amount of powder and crack cocaine, as well as a child's school bag. Other items seized during the search included scales, sandwich baggies, a handgun, walkie-talkies, eight or nine cell phones, a DVD entitled "The King of Coke," and large amounts of cash, as well as more powder and crack cocaine, marijuana and oxycodeone. Except for Mr. Jackson, all of the other defendants had drugs on their person.
 {¶ 5} As a result of the drug raid, Mr. Jackson was charged with two counts of complicity to trafficking in drugs, with a juvenile specifications, in violation of R.C. 2923.03(A)(2) and2925.03(C)(4)(d) (e); and two counts of drug possession, in violation of R.C. 2925.11(A)(C)(4)(b) (d), for the powder and crack cocaine that was found on the kitchen table.
 {¶ 6} After a two-day jury trial, a guilty verdict was returned on all counts. Mr. Jackson was sentenced to an eight-year term on the complicity to drug trafficking counts, and two one-year concurrent terms for the counts of possession, which were *Page 3 
ordered to run consecutively to the eight-year term, for a total term of imprisonment of nine years. In addition, Mr. Jackson was ordered to forfeit the $483 that was found lying around and underneath him, and ordered to pay court costs.
 {¶ 7} Mr. Jackson timely appealed and now raises eleven assignments of error:
 {¶ 8} "[1.] Appellant was denied effective assistance of counsel when he was substantially and unfairly prejudiced by his trial counsel's deficient performance.
 {¶ 9} "[2.] It was an abuse of discretion for the trial court to allow the state to introduce and parade before the jury, in the absence of any predicate activity connected to appellant, an unrelated firearm and other extraneous items that prejudiced the jury in its determination of whether the appellant had the requisite intent to possess or traffic in drugs.
 {¶ 10} "[3.] The appellant's right to confrontation was violated when the trial court admitted a cocaine laboratory analysis report without permitting appellant the opportunity to cross-examine the chemist or technician who prepared it.
 {¶ 11} "[4.] The trial court erred when it did not properly and fully instruct the jury on evidence affecting its determination of whether the appellant possessed the requisite intent for complicity to traffic in, or to possess, drugs.
 {¶ 12} "[5.] The trial court's failure to instruct the jury to limit its use of the admission of evidence that was substantially prejudicial compromised the integrity of the judicial proceedings, which deprived appellant of a fair trial.
 {¶ 13} "[6.] The castigation of defense counsel constituted judicial misconduct which deprived appellant of a fair trial in violation of theFourteenth Amendment and Article I, Section 10, of the Ohio Constitution. *Page 4 
 {¶ 14} "[7.] The trial court erred when it permitted the jury to deliberate the case on evidence that was insufficient, as a matter of law.
 {¶ 15} "[8.] The jury verdicts were against the manifest weight of the evidence and contrary to law.
 {¶ 16} "[9.] Appellant's aggregate sentence of nine years for complicity to traffic [sic] in drugs, and for possession of the same drugs, is contrary to law.
 {¶ 17} "[10.] Appellant was denied due process and his statutory right to a speedy trial when the trial court failed to dismiss the indictment after appellant awaited trial for an unreasonable amount of time, and for a period which exceeded two hundred seventy days.
 {¶ 18} "[11.] The cumulative effect of the errors in the trial violated appellant's right to due process and rendered the trial fundamentally unfair."
 {¶ 19} BCI Analysis Report as a Business Record Pursuant toEvid. R. 803(6)
 {¶ 20} We address Mr. Jackson's third assignment of error first because we find it to be with merit, and thus dispositive of this appeal.
 {¶ 21} Mr. Jackson alleges in this assignment of error that his right to confrontation was violated when the court admitted into evidence the drug laboratory analysis report from the Ohio Bureau of Criminal Investigation ("BCI"), without permitting him an opportunity to cross-examine "the chemist or technician who prepared it."
 {¶ 22} We do not reach the issue of whether Mr. Jackson's confrontational rights were violated because we find that the court improperly admitted the report as only a detective, not employed by BCI, testified as to the contents. Thus, the predicate *Page 5 
foundation required for "business records" pursuant to Evid. R. 803(6) as to authenticity was not laid before the lab report was admitted into evidence.
 {¶ 23} Thus, we reverse and remand for retrial upon the authority of the Supreme Court of Ohio's holding in State v. Crager,116 Ohio St.3d 369, 2007-Ohio-6840, which held that such lab reports are "business records" pursuant to Evid. R. 803(6).[1] As no predicate foundation was laid for the admission of this report as a business record under the hearsay exception of Evid. R. 803(6), it was improperly admitted into evidence.
 {¶ 24} In State v. Crager, the Supreme Court of Ohio began their analysis with a predicate determination that the DNA reports at issue in that case were admissible as "business records," under the hearsay exception of Evid. R. 803(6). The basic premise underlying its analysis was that "[t]he reports were made `from information transmitted by, a person with knowledge, [and are] kept in the course of a regularly conducted business activity,' and it `was the regular practice of that business' (BCI) to make the reports. Furthermore, the reports wereintroduced through the testimony of a `qualified witness' * * * and nothing suggests that the `methods or circumstances of preparation indicate lack of trustworthiness.'" (Emphasis added.) Id. at ¶ 38, see,State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶ 81-82 (autopsy reports are business records).
 {¶ 25} Evid. R. 803(6), which addresses the admissibility of business records as an exception to the general hearsay rules, provides: *Page 6 
 {¶ 26} "Records of Regularly Conducted Activity. A memorandum, report, record or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * report * * *, all as shown by the testimony ofthe custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *." (Emphasis added.)
 {¶ 27} To be admissible under Evid. R. 803(6), then, "a business record must display four essential elements: (1) it must have been kept in the regular course of business; (2) it must stem from a source who had personal knowledge of the acts, events, or conditions; (3) it must have been recorded at or near the time of the transaction; and (4) a foundation must be established by the testimony of either the custodian of the record or some other qualified person." State v. Comstock (Aug. 15, 1997), 11th Dist. No. 96-A-0058, 1997 Ohio App. LEXIS 3670, 17-18.
 {¶ 28} Although not artfully articulated, defense counsel's objection to admission of the report at the close of the state's case in chief was that only Detective Janek testified as to its contents, and thus the predicate foundation for the lab report's authenticity pursuant to Evid. R. 803(6) was not laid and the report was erroneously admitted.
 {¶ 29} "The decision to admit a business record into evidence pursuant to Evid. R. 803(6) rests within the sound discretion of the trial court, whose determination will not be disturbed on appeal unless an abuse of discretion can be shown." Hinte v. Echo, *Page 7 Inc. (1998), 130 Ohio App.3d 678, 683, citing WUPW TV-36 v. DirectResults Marketing, Inc. (1990), 70 Ohio App.3d 710, 714. "Admission of business records, however, will constitute an abuse of discretion by thetrial court where inadequate foundation was laid to establish theadmissibility of the records under Evid. R. 803(6)." (Emphasis added.) Id. at 684, citing Comstock.
 {¶ 30} While Evid. R. 803(6) "does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document," the witness must demonstrate that "he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what is purports to be, and was made in the ordinary course of business." Hinte at 684, citing Kekst Architects, Inc. v.George Dev. Group (May 15, 1997), 8th Dist. No. 70835, 1997 Ohio App. LEXIS 2077, 12-13, citing WUPW TV-36.
 {¶ 31} The crux of the error in this case lies in the fact that no one from BCI laid a foundation for the lab report's admissibility through a witness with a working knowledge of the specific record-keeping system that produced the document. Only Detective Janek testified as to the contents of the report. Detective Janek is not employed by BCI or a private company as a chemical analyst or lab technician. He certainly is not a records custodian, but rather is an officer of the county who is not familiar with the regular procedures of BCI. He is not qualified to attest to the normal business practice of conducting drug analyses, such as the procedures performed, test results, and/or *Page 8 
give an expert opinion based on the conclusions to be drawn from the report nor is he qualified to attest to the regular practice of preparing reports.
 {¶ 32} In Comstock, we found the witness who testified to certain business receipts could not be declared a qualified witness to lay a foundation for the admissibility of such receipts because the witness was merely a receiver of the receipts from the business and had no internal knowledge of the business or its working practices itself. Thus, we held that "information in records that an organization receives from outsiders is not part of its business records for purposes of Evid. R. 803(6)." Id. at 21, citing Babb v. Ford Motor Co. (1987),41 Ohio App.3d 174, 177. Likewise here, the detective is a third party outsider to the internal workings of BCI.
 {¶ 33} We recognize that our holding is significant as without a crucial element of the state's case, the evidence of the drugs, Mr. Jackson's guilt cannot be established beyond a reasonable doubt; however, we must reverse as the state failed to meet the predicate test of admissibility by failing to call anyone from BCI to authenticate the report. Quite simply, "[a] valid foundation was not established by the custodian or a person sufficiently familiar with the operation of the business which produced the records." Comstock at 21. Thus, as inComstock, we must reverse.
 {¶ 34} Accordingly, Mr. Jackson's third assignment of error is with merit and we reverse and remand for retrial on that basis.
 {¶ 35} Ineffective Assistance of Counsel
 {¶ 36} In his first assignment of error, Mr. Jackson contends that he was deprived the effective assistance of counsel because his counsel did not communicate plea offers from the state and because his counsel asked open-ended questions on cross-examination *Page 9 
of witness Patrolman Paromaki, which he alleges created a prejudicial impression that he had a criminal background. Mr. Jackson further contends that his counsel was ineffective because he failed to make an insufficiency of the evidence motion pursuant to Crim. R. 29, failed to address his right to confrontation of witnesses in regards to the BCI report, and failed to request proper jury instructions on complicity. We find these contentions to be without merit.
 {¶ 37} "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * The Supreme Court of Ohio recognized that there are `(* * *) countless ways to provide effective assistance in any given case.'" State v.Janek, 11th Dist. No. 2007-A-0070, 2008-Ohio-2133, ¶ 42, quotingState v. Vinson, 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 29, citingState v. Allen (Sept. 22, 2000), 11th Dist. No. 99-A-0050, 2000 Ohio App. LEXIS 4356, 10, citing State v. Bradley (1989), 42 Ohio St.3d 136,142, quoting Strickland v. Washington (1984), 466 U.S. 668, 687-689. "Thus, the Supreme Court of Ohio went on to state in Bradley, that `judicial scrutiny of counsel's performance must be highly deferential. (* * *).'" Id.
 {¶ 38} "[B]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id., quoting Vinson at ¶ 30. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id. *Page 10 
 {¶ 39} "Thus, `[t]o warrant a reversal, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at ¶ 44, quoting Vinson at ¶ 30 (citations omitted.)
 {¶ 40} Failure of Counsel to Communicate Plea Bargain
 {¶ 41} Mr. Jackson first alleges that his counsel was ineffective in failing to communicate two plea bargains that were offered by the state after the trial court's cutoff date for acceptance of such offers.
 {¶ 42} The sentencing transcript reveals that Mr. Jackson raised the issue of two plea bargains he felt were not communicated by his counsel during the sentencing hearing. The state reviewed that it offered a plea to a third degree felony on September 20, 2007. Mr. Jackson's counsel told the court that he conveyed the offer, at which time both he and Mr. Jackson agreed to a position of "no plea to any felony."
 {¶ 43} Several days later, the state then made another plea offer of a no contest plea to a fourth degree felony. Defense counsel admitted that he did not convey the offer, reasoning that the strategy was to pursue trial or accept a misdemeanor, only. The court reiterated throughout this proffer that it would not accept any plea after the cutoff date, and moreover, that it would never accept a fourth degree felony plea agreement in a case where a defendant is charged with two second degree felonies.
 {¶ 44} There is no doubt that counsel's failure to communicate the final plea offer constitutes ineffective assistance of counsel, thereby satisfying the first prong of the Strickland test. "A defense attorney's failure to notify his client of a prosecutor's plea *Page 11 
offer constitutes ineffective assistance of counsel * * * and satisfies the deficient performance prong of the Strickland test." State v.Heffernan, 12th Dist. Nos. CA2005-11-104 and CA2005-11-105,2006-Ohio-5659, ¶ 19, quoting State v. Hicks, 12th Dist. No. CA2002-08-198, 2003-Ohio-7210, ¶ 14. "But for the claim to have merit, appellant must demonstrate prejudice by showing that he would have accepted the offer had it been conveyed to him." Id., citingHicks at ¶ 15. See, also, State v. Bates, 8th Dist. No. 76251, 1999 Ohio App. LEXIS 5300.
 {¶ 45} Putting aside the court's strong admonitions that it would never have accepted such a plea bargain, Mr. Jackson fails to prove that he would have accepted the offer had it been conveyed. Indeed, a review of the sentencing hearing transcript reveals Mr. Jackson only argues that he was falsely represented. He never argued or even alleged on appeal that he would have accepted the fourth degree felony plea offer.
 {¶ 46} "While the wisdom of counsel's decision not to convey the plea offer to appellant may be debatable, the record reveals that appellant failed to demonstrate prejudice by showing that he would have accepted the offer." Id. at ¶ 21, see Hicks at ¶ 15.
 {¶ 47} Thus, this argument is without merit.
 {¶ 48} Cross-Examination of Patrolman Paromaki
 {¶ 49} Second, Mr. Jackson alleges that defense counsel was ineffective in his cross-examination of Patrolman Paromaki, in which counsel asked Patrolman Paromaki whether he "had any personal knowledge of any of those four people in that house?" Patrolman Paromaki replied: "I believe over the course of my 13 years that I've had *Page 12 
dealings with each individual that was in that house." Counsel then asked: "And prior to the entry, did you know that those were the individuals that were there?"
 {¶ 50} Before this line of questioning, the transcript reveals that defense counsel was trying to ascertain the nature and extent of Patrolman Paromaki's personal knowledge versus what was simply learned from the search warrant itself. Thus, it would seem that counsel was trying to imply that Patrolman Paromaki did not expect Mr. Jackson to be present in the drug house, which could be viewed as evidence of a tenuous connection between Mr. Jackson and drug trafficking.
 {¶ 51} Moreover, Patrolman Paromaki did not state how or why he knew Mr. Jackson from the past. It is doubtful that this obtuse reference constituted such prejudice that a contrary result would have occurred. Thus, even if we did find defense counsel deficient in his cross-examination, which we do not, Mr. Jackson fails to show prejudice as a result.
 {¶ 52} Failure to Raise Insufficiency of the Evidence
 {¶ 53} Third, Mr. Jackson alleges he was deprived the effective assistance of counsel because his counsel failed to make an insufficiency of the evidence motion at the end of the state's case-in-chief and at the close of trial pursuant to Crim. R. 29.
 {¶ 54} We have previously held that "the failure of trial counsel to make a Crim. R. 29 motion does not constitute ineffective assistance of counsel when the state's case-in chief links the defendant to the crimes of which he or she is accused." State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, ¶ 17, quoting State v. McKinley, 10th Dist. No. 02AP-371, 2002-Ohio-7197, ¶ 39, citing State v. Small (May 1, 2001), 10th Dist. No. 00 AP-1149, 2001 Ohio App. LEXIS 1963. See, also,State v. Reading, 5th Dist. *Page 13 
No. 07-CA-83, 2008-Ohio-2748, ¶ 42; State v. Collier, II, 2nd Dist No. 2006 CA 102 and 2006 CA 104, 2007-Ohio-6349, ¶ 60.
 {¶ 55} This issue, however, is moot in light of the erroneous admission of the BCI lab report. Thus, this argument is without merit.
 {¶ 56} Failure to Address Right to Confrontation Violation
 {¶ 57} Fourth, Mr. Jackson argues his counsel's performance was substandard as he failed to request an independent weight and content analysis of the powder and crack cocaine, and thus failed to protect his right to confrontation. Pursuant to R.C. 2925.51(F), a defendant may obtain an independent analysis by making a written request within seven days of receiving the lab report and notice from the state.
 {¶ 58} Because we found the erroneous admission of the BCI report to be dispositive of this appeal, this issue is also moot.
 {¶ 59} Failure to Request Jury Instructions
 {¶ 60} Finally, Mr. Jackson argues that his counsel's failure to request specific jury instructions on "mere presence, mere association, and the mens rea requirement or proof of these offenses" were crucial to the jury's determination of whether Mr. Jackson had the requisite intent to be found guilty of complicity to trafficking in drugs.
 {¶ 61} As we will address later in our analysis of Mr. Jackson's fourth assignment of error, we find no error in the jury instructions, thus we do not find defense counsel to have been deficient in his failure to request such a specific instruction. The court gave the standard pattern instruction on complicity, which encompassed the concept that mere presence is insufficient to convict Mr. Jackson for aiding and abetting another in the trafficking of drugs. *Page 14 
 {¶ 62} Thus, this argument is without merit. Even if we did find that defense counsel was deficient for his failure to request a "mere possession" instruction, Mr. Jackson still failed to prove that but for this instruction, the result would have been otherwise and the jury would have acquitted him.
 {¶ 63} Mr. Jackson's first assignment of error is without merit.
 {¶ 64} Prejudicial Evidence
 {¶ 65} In his second and fifth assignment of error, Mr. Jackson contends that the trial court erred in admitting evidence that he alleges was "unrelated" and "extraneous" to the jury's determination of whether Mr. Jackson intended to possess or traffic in drugs. Specifically, in his second assignment of error, he contests the admission of testimony regarding a .45 caliber gun that was found upstairs, and in his fifth assignment of error, he contests the introduction of a "virtual laundry list of items seized from beyond the Appellant's downstairs." This evidence included sandwich baggies, a photograph of a video of the "King of Coke," handheld walkie-talkies, chemistry and water beakers, baking soda, and eight or nine cell phones. We find these contentions to be without merit as they are probative evidence as to whether Mr. Jackson was engaged in aiding and abetting the trafficking of drugs.
 {¶ 66} "We review the trial court's admission or exclusion of evidence for an abuse of discretion." Vinson at ¶ 48, quoting State v.Sledge, 2003-Ohio-4100, ¶ 20, citing State v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 Ohio App. LEXIS 1391, 4-5, citingRenfro v. Black (1990), 52 Ohio St.3d 27,32. An abuse of discretion is more than an error of law or judgment, it connotes that the trial court's *Page 15 
ruling as unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 67} Specifically, Mr. Jackson objected to the introduction of the handgun during trial, and other evidence that was collected from the upstairs of the home during the sweep, such as cash and more drugs; as well as other evidence that is regularly associated with the drug trade such as sandwich baggies, cell phones, and scales. The court overruled the objection, and allowed the state to proceed, with a cautionary instruction to the jury that he would tell them to disregard the evidence if it found the evidence irrelevant.
 {¶ 68} The evidence of the .45 caliber revolver that was found upstairs is more probative than prejudicial, however, as it is indicia of a drug house. Thus, the inference could be drawn, along with the other evidence that was collected from the "sweep" that Mr. Jackson challenges was erroneously admitted, that he was aiding and abetting or engaging in complicity to trafficking in drugs because he was there to purchase the drugs. One could not say that this is totally irrelevant evidence to the charges Mr. Jackson was facing, nor so prejudicial that it would confuse or "taint" the minds of the jury.
 {¶ 69} Pursuant to Evid. R. 401, "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence."
 {¶ 70} "Under Evid. R. 402, all relevant evidence is admissible, subject to enumerated exceptions." State v. Rudge, 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, 31. *Page 16 
 {¶ 71} Further, "[a]n exception to the general rule is that relevant evidence is inadmissible if its probative value is `substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid. R. 403(A)." Id. at 32.
 {¶ 72} We do not find the admission of this evidence any more prejudicial than the other evidence taken from the drug sweep, and we do not find the admission of this evidence to be so prejudicial as to constitute an abuse of discretion.
 {¶ 73} "In balancing the probative value against the danger of unfair prejudice, a trial court is vested with broad discretion; and its decision should not be disturbed absent a showing of abuse of discretion. * * *" (Citation omitted.) Id. at 32, citing State v.Lundgren (Dec. 30, 1993), 11th Dist. Nos. 90-L-15-150, and 90-L-15-163, 1993 Ohio App. LEXIS 6374, 13-14.
 {¶ 74} The evidence presented is not so prejudicial as to cloud the lens of the jurors in being able to distinguish between the fact that this was a drug house, from the extent of Mr. Jackson's involvement in the drug house, i.e. if he was involved in aiding and abetting in drug trafficking by his purchase of the drugs. Specifically as to the gun, it was clear it did not belong to Mr. Jackson, and taken with the other evidence collected in the sweep, it was more probative to the determination of whether drug trafficking was being committed, than prejudicial as it relates to Mr. Jackson's participation in the offense. Without first being able to establish that drug trafficking was being committed, the state would not have been able to prove that Mr. Jackson was complicit. Thus, the evidence was more probative than prejudicial, as it was not confusing and certainly relevant to elements of the charges. *Page 17 
 {¶ 75} No testimony, or indeed, inference could be made that did or could connect the gun to Mr. Jackson. Nor do we find it an abuse of discretion to allow into evidence the other indicia of drug trafficking that was collected from the raid, as it is the very evidence that is relevant to prove that drug trafficking was occurring in that house.
 {¶ 76} Mr. Jackson's second and fifth assignments of error are without merit.
 {¶ 77} Jury Instructions
 {¶ 78} In his fourth assignment of error, Mr. Jackson contends that the court erred in failing to instruct the jury on Mr. Jackson's intent to aid and abet in drug trafficking. Specifically, Mr. Jackson contends that the court should have instructed the jury that Mr. Jackson's mere presence at the scene was insufficient; that his mere association with the principal offenders was insufficient; and further, that the prosecution must establish that Mr. Jackson had the intent to traffic in drugs. We find this argument to be without merit, as a review of the jury instructions reveals that the court gave the pattern instruction for complicity.
 {¶ 79} Specifically, the court instructed the jury on the elements of drug trafficking within the vicinity of a juvenile pursuant to R.C. 2925.03, and then defined the term "knowingly" for the jury, further stating: "And since you cannot look into the mind of another, knowledge is determined from all these facts and circumstances whether there existed, at the time, in the mind of the defendant, Tramaine Jackson, an awareness of the probability that he aided and abetted — aided and abetted another in committing the offense * * *."
 {¶ 80} The court then defined "aided and abetted" as "I should say, means supported assisted, encouraged, cooperated with, advised or incited. To knowingly aid *Page 18 
and abet means the defendant was aware that he was aiding and abetting another to sell drugs."
 {¶ 81} The court went on to define the elements of trafficking, which included again reviewing the term "knowingly," further telling the jury to disregard motive, and defining the term "sale." The court then briefly explained the difference between a principal and agent, and further remarked, "So, if you need any further definition, I'll give that to you, but I think you understand that." Finally, the court defined the term "offer," "reasonable cause to believe," and "intent." He concluded in his instruction on count one that Mr. Jackson could not be found guilty of complicity if the jury determined no actual offense of trafficking in drugs was committed. The court repeated similar instructions, although in a briefer fashion for the second count of drug trafficking.
 {¶ 82} "Crim. R. 30 provides that a party may not assign as error the failure of the trial court to give certain jury instructions where he failed to object thereto." State v. McDermott, 9th Dist. No. L-03-1110,2005-Ohio-2095, ¶ 43, see, also, State v. Graven (1978),54 Ohio St.2d 114, 116. "The failure to give certain jury instructions, however, may be reviewable by the appellate court if it rises to the level of plain error as defined by Crim. R. 52." Id. citing State v. Faulkner (1978),56 Ohio St.2d 42, 47.
 {¶ 83} A review of this jury instruction reveals no plain error as the court's instruction was consistent with the Supreme Court of Ohio's holding in State v. Johnson (2001), 93 Ohio St.3d 240, where the court stated: "`To uphold a conviction for complicity by aiding and abetting, the evidence must show that with shared criminal intent, the defendantsupported, assisted, encouraged, cooperated with, advised, or incitedthe principal in the commission of the crime.'" State v. Simmons, 7th Dist. *Page 19 
No. 06-JE-4, 2007-Ohio-1570, ¶ 97, quoting Johnson at 245-246. See, also,McDermott at ¶ 44.
 {¶ 84} Moreover, "a jury charge lacking the desired `mere presence' instruction is not deficient," when the mere presence rule is "consumed within the court's statement that complicity is performed by an accomplice who knowingly assists or joins in the crime." Id. at ¶ 98, citing State v. Gilliam, 7th Dist. No. 03MA176, 2005-Ohio-2791, ¶ 72 andState v. Johnson (2000), 140 Ohio App.3d 385, 394.
 {¶ 85} Thus, as our review indicates, the jury was given proper instructions, and there is no "obvious error affecting such substantial rights that it was outcome determinative." Id. at ¶ 100, citingState v. Nolling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62.
 {¶ 86} Mr. Jackson's fourth assignment of error is without merit.
 {¶ 87} The Castigation of Counsel
 {¶ 88} In his sixth assignment of error, Mr. Jackson contends that he was substantially prejudiced because the trial court constantly berated defense counsel before the jury, thus depriving him of a fair trial in violation of the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution. We find this contention to be without merit, as the court admonished both the state and defense counsel equally, and further, gave a cautionary instruction to the jury regarding his comments to counsel both after the comments were made and before deliberations began. Though at times biting, the court's remarks in no way directly or even impliedly expressed an opinion as to the merits of the case. Rather, the court was trying to limit defense *Page 20 
counsel's cross-examination to relevant and material matters in order to keep the proceedings moving.
 {¶ 89} "Pursuant to R.C. 2945.03, `[t]he judges of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding matters in issue.'" State v. Smith, 11th Dist. Nos. 2006-P-0101 and 2006-P-0102, 2008-Ohio-3251, ¶ 40, see, also,State v. Miller, 11th Dist. No. 2004-T-0092, 2005-Ohio-5283, ¶ 20. "Further, in presiding over a trial, a judge must be cognizant of the effect of his or her remarks upon the jury." Id., citing State v.Wade (1978), 53 Ohio St.2d 182, 187. This does not, however, imply a judge is precluded from making remarks during the course of a trial. Id., citing State v. Hardy (Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, 20. "An appellate court reviewing the propriety of a judge's remarks before a jury must determine whether the comments were prejudicial to a defendant's right to a fair trial." Id., citing Wade at 188; see, also, Miller, at ¶ 21.
 {¶ 90} "To aid in this determination, the Supreme Court of Ohio has stated that courts shall adhere to the following rules: `(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.'" Id. at ¶ 41, quoting Wade at 188. *Page 21 
 {¶ 91} While Mr. Jackson is correct that the court's impatience with defense counsel is evident throughout the trial, there is also evidence that the court was equally impatient with the state. Moreover, after urging defense counsel to move along, the court immediately told the jury:
 {¶ 92} "Ladies and gentlemen, just because I chide an attorney from time to time, and I would do it to both of them and probably have many times, don't make any kind of inference from that, that somehow that should weigh or affect your consideration or deliberation in this case.
 {¶ 93} "Because I am the guy who calls the rules and sometimes, as you probably have observed in scoring contests, that once in a while an umpire may get angry and yell at a coach and player. Anybody ever seen that? Right.
 {¶ 94} "That doesn't mean anything about the fairness of the game. Anybody affected on how they're going to decide this case because sometimes I get upset with Mr. Brown, that's today, probably yesterday I got upset with Ms. Thomas. I don't remember. * * *."
 {¶ 95} The court then again gave a cautionary instruction to the jury prior to deliberations explaining that: "If, during the course of the trial, I said or did anything that you consider an indication of the Court's view of the facts, you're instructed to disregard it and, as you know, from time to time, I had a couple of words with one counsel or the other, and that's the — just the way it is in the game or a trial. The ref sometimes chews out one side or the other. Disregard it. It doesn't mean anything one way or the other."
 {¶ 96} While the court may have made harsh comments to defense counsel in an effort to expedite his meandering cross-examination, there was no prejudicial harm *Page 22 
done in this case. The court remained neutral as to the merits of the case, and was merely trying to expedite the presentation of evidence.
 {¶ 97} "Typically, a trial court's instruction to disregard any perceived expression of its opinion weighs against a finding of prejudice." Smith at ¶ 55, see, e.g., State v. Loza (1994),71 Ohio St.3d 61, 75 (observing that a jury is presumed to follow the instructions of the trial court).
 {¶ 98} Quite simply, Mr. Jackson failed to allege that the court's sharp urgings rose to a level of prejudice, influencing the jury against him warranting reversal. "A trial judge enjoys a presumption that his conduct and actions are fair and impartial." Smith at ¶ 78, citingIn re Disqualification of Kilpatrick (1989), 47 Ohio St.3d 605, 606. Mr. Jackson failed to overcome this presumption.
 {¶ 99} We find Mr. Jackson's sixth assignment of error to be without merit.
 {¶ 100} Insufficiency of the Evidence and Manifest Weight
 {¶ 101} Mr. Jackson raises an insufficiency of the evidence argument in his seventh assignment of error, and a manifest weight of the evidence argument in his eighth assignment. We summarily find these arguments of error to be moot since we found the admission of the BCI report to be dispositive of this appeal.
 {¶ 102} Had the BCI report been excluded there would have been insufficient evidence to prove the elements of drug possession and trafficking in drugs since there would have been no evidence of drugs. Similarly, the verdict is now against the manifest weight of the evidence.
 {¶ 103} For these reasons, we find Mr. Jackson's seventh and eighth assignment of errors to be moot. *Page 23 
 {¶ 104} Sentence as Contrary to Law
 {¶ 105} In his ninth assignment of error, Mr. Jackson contends that his sentence is contrary to law because drug trafficking and drug possession are allied offenses of similar import pursuant to R.C. 2941.25, and therefore should have been merged for sentencing purposes. We find this contention to have merit in light of the recent Ohio Supreme Court holding in State v. Cabrales, 118 Ohio St.3d 54,2008-Ohio-1625.
 {¶ 106} Specifically, "the Cabrales Court recognized that R.C. 2941.25
requires a two-step analysis. `In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.'Cabrales at ¶ 14, quoting State v. Blankenship, 38 Ohio St.3d 116, 117. Further, pursuant to the holding in State v. Rance, the elements of the offense must be compared in the abstract, without consideration of the particular facts of the case." State v. Johnson, 8th Dist. No. 07CA3148,2008-Ohio-2646, ¶ 16, citing Rance (1999), 85 Ohio St.3d 632, 636.
 {¶ 107} "Though for purposes of R.C. 2941.25(A), Rance requires the elements of the offenses to be compared in the abstract, theCabrales Court clarified that Rance does not require comparison of those elements. Cabrales at ¶ 22. Instead of a strict textual comparison, the test is whether the elements of the offense, considered in the *Page 24 
abstract, `are so similar that the commission of one will necessarily result in commission of the other * * *' Cabrales at ¶ 26. The court further stated: `Were we to apply Rance as requiring a strict textual comparison as urged by the state, we would be compelled to reverse the appellate court's holding that possession and trafficking under R.C. 2925.03(A)(2) of the same controlled substance are allied offenses of similar import because the elements of these do not coincide exactly, even though common sense and logic tell us that in order to prepare a controlled substance for shipping, ship it, transport, deliver it, prepare it for distribution, or distribute it, one must necessarily also possess it.'" Id. at ¶ 17, citing Cabrales at ¶ 24.
 {¶ 108} In this case, Mr. Jackson was convicted of complicity to trafficking in drugs, specifically powder and crack cocaine, as well as possession of the same. In order to be convicted of aiding and abetting in drug trafficking in this case, as he was purchasing the powder and crack cocaine, he necessarily would have to possess both forms of cocaine. Thus, it was error for the trial court to convict him on all four counts and the counts of possession should have been merged with those of complicity to drug trafficking for sentencing purposes.
 {¶ 109} If we did not find Mr. Jackson's third assignment of error to be dispositive of this appeal, we would reverse and remand for resentencing in light of Cabrales.
 {¶ 110} Mr. Jackson's ninth assignment of error is with merit.
 {¶ 111} Speedy Trial
 {¶ 112} In his tenth assignment of error, Mr. Jackson contends the court erred in overruling his motion to dismiss on speedy trial grounds. Specifically, Mr. Jackson contends that his right to due process was violated because he was not brought to trial *Page 25 
within two hundred seventy days as required pursuant to R.C. 2954.71(C)(2). We find this contention to be without merit.
 {¶ 113} "The right to a speedy trial is guaranteed by theSixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution. The statutory speedy trial provisions set forth at R.C. 2945.71 et seq. are coextensive with the constitutional speedy trial provisions." State v. Ange, 11th Dist. No. 2007-P-0108,2008-Ohio-2314, ¶ 20, quoting State v. Kist, Jr., 173 Ohio App.3d 158,2007-Ohio-4773, ¶ 16, citing State v. King (1994), 70 Ohio St.3d 158,160. "The statutory speedy trial provisions `constitute a rational effort to enforce the constitutional right to a * * * speedy trial and [must] be strictly enforced by the courts of this state.'" Id., quotingState v. Pachay (1980), 64 Ohio St.2d 218, at syllabus. "The speedy trial statute is constitutional, mandatory, and must be strictly constructed against the state." Id., citing State v. Singer (1977),50 Ohio St.2d 103, 109.
 {¶ 114} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side, and determine whether the case was tried within the time limits set by R.C. 2945.71." Id. at ¶ 21, citing Kist at ¶ 17, citing State v. Blumensaadt, 11th Dist. No. 2000-L-101, 2001-Ohio-4317, ¶ 16; see, also, State v. Pierson,149 Ohio App.3d 318, 2002-Ohio-4515, ¶ 12.
 {¶ 115} "Speedy trial issues present mixed questions of law and fact." Id. at ¶ 22, quoting Kist at ¶ 18, citing State v. Hiatt (1997),120 Ohio App.3d 247, 261. "We accept the facts as found by the trial court on some competent, credible evidence, but freely review the application of the law to the facts." Id., citing Hiatt at 261. *Page 26 
 {¶ 116} Mr. Jackson fails to allege a prima facie speedy trial violation as he did not timely respond to the state's reciprocal discovery request. The court dismissed Mr. Jackson's motion, finding that only one hundred eighty-four days had passed since his arraignment because he failed to respond to the state's request for discovery within a reasonable time. The court found that a "reasonable amount of time to respond to such a request is thirty days." Indeed, our review indicates that at the time Mr. Jackson filed his motion on September 17, 2007, he still did not respond to the state's reciprocal discovery request.
 {¶ 117} "[A] defendant's failure to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy trial time pursuant to R.C. 2945.72(D)." State v. Palmer, 112 Ohio St.3d 457, 2007-Ohio-374, ¶ 24. Furthermore, "the tolling of a statutory speedy-trial time based on defendant's neglect in failing to respond within a reasonable time to a prosecution request for discovery is not dependent upon the filing of a motion to compel discovery by the prosecution." Id. The court inPalmer specifically found thirty days to be "reasonable" in that case, holding that "a trial court shall determine the day by which the defendant should reasonably have responded to a reciprocal discovery request based on the totality of facts and circumstances of the case, including the time established for response by local rule, if applicable."
 {¶ 118} In this case, the trial court determined that thirty days was reasonable, which was "sixteen days beyond what is allowed pursuant to the Ashtabula County Local Rules. Speedy trial time was tolled on July 12, 2007, which is thirty days after the State of Ohio filed its request for discovery upon the defendant on June 12, 2007." *Page 27 
 {¶ 119} As Mr. Jackson did not submit any discovery until after the state filed a motion to compel on September 17, 2007, he has failed to establish a prima facie violation of his speedy trial rights.
 {¶ 120} Mr. Jackson's tenth assignment of error is without merit.
 {¶ 121} Cumulative Error
 {¶ 122} In his last assignment of error, Mr. Jackson argues that the cumulative effect of the errors in the trial violated his right to due process and rendered the trial fundamentally unfair. Since we found his third assignment of error to be dispositive of this appeal, this issue is moot.
 {¶ 123} We reverse and remand for retrial in accordance with this opinion since we find that Mr. Jackson's right to confrontation was violated as there was no foundation laid for the admittance of the BCI lab analysis report. In addition, Mr. Jackson's ninth assignment of error is with merit as the counts of possession and drug trafficking are allied offenses of similar import and should have been merged for sentencing purposes.
 {¶ 124} The judgment of the Ashtabula County Court of Common Pleas is reversed and remanded in accordance with the foregoing.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY O'TOOLE, J., concurs with Concurring Opinion.
[1] The United States Supreme Court recently heard oral arguments on this issue, whether such lab reports that are prepared solely in preparation for trial, are "testimonial" in nature or are merely business or public records that do not trigger a defendant'sSixth Amendment confrontational rights in the case of Melendez-Diaz, No. 07-591 on November 10, 2008.